

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00075-CV

_____


ROGER AND LINDA HOOPER, Appellants

V.

BOBBY SMALLWOOD, INDIVIDUALLY AND D/B/A BOBBY
SMALLWOOD CONSTRUCTION CO., INC., ET AL., Appellees


On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 74121


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

The 8,000-square-foot dream home of Roger and Linda Hooper, and the lawsuit that arose out of the construction of the house, became a nightmare for them, as well as for the builder of the house, Bobby Smallwood, individually and d/b/a Bobby Smallwood Construction Company, Inc., and concrete subcontractor, Robert Skinner. The central question in this case is where the blame should be placed for the serious physical problems that developed with the house. After a trial in which a Lamar County jury heard substantially conflicting testimony, the jury lay the blame squarely at the Hoopers' feet. From the trial court's take-nothing judgment, the Hoopers appeal, raising multiple, extensive, and passionate arguments to this Court. We affirm the judgment of the trial court, because we agree with Smallwood's assertions on appeal:

(1)     no error was committed in refusing the requested voir dire of witness Junior Fowler or in allowing his testimony;

(2)     limiting testimony of expert James Pearson was not error;

(3)     no error was committed relative to breach-of-warranty jury issues;

(4)     legally and factually sufficient evidence supports the jury's verdict;

(5)     limiting post-trial discovery was not an abuse of discretion; and

(6)     refusing a new trial was not an abuse of discretion.

As in many negligence lawsuits, the central bone of contention is whose behavior caused the problem at issue. Was the instability in the house's foundation caused by Smallwood's decision to

2

dig out a "bathtub" in the clay and to fill it with sand, combined with the wide spacing of stiffening beams (thicker sections) in the foundation? Or, on the other hand, were the problems caused by the Hoopers' unilateral acts of installing sidewalks around the house, leveling the slope immediately adjacent to the house, adding so much soil just around the house that it brought the soil level to an improperly high point on the foundation itself, and/or installing a swimming pool behind the house?

No dispute exists that the house developed various ailments related to its foundation: foundation cracks, shifting and lifting walls, cracks in wallboard, and sticking doors and windows. After hearing a considerable amount of testimony from a number of different sources, in answering percentage negligence questions, the jury found that the Hoopers' negligence in making changes to the area around the foundation was the sole cause of the problems; that Smallwood and Skinner did not fail to comply with any warranty; that Smallwood did not engage in deceptive acts or practices; and that the cost of repairs, loss of value, consequential damages, and attorney's fees for the Hoopers' attorney were all zero. The trial court accordingly rendered a take-nothing judgment in favor of Smallwood and Skinner.

Although the Hoopers' brief sets out twenty-one "issues," those issues orbit largely around two focal points: the witness, Junior Fowler, and the sufficiency of the evidence. We have grouped the issues for clarity.

We note that co-defendant Skinner is mentioned only once in the list of issues. Skinner is mentioned only in connection with an alleged error because the trial court refused to submit a breach

of warranty question naming Skinner. That argument consists of two sentences at the end of the brief, without discussion or reference to the record or to authority. Because the issue has not been adequately briefed, we will not address it. *See* TEX. R. APP. P. 38.1(h).

*(1)* *No Error Was Committed in Refusing the Requested Voir Dire of Witness Junior Fowler or in Allowing His Testimony*

A huge portion of the Hoopers' effort on appeal is about witness Fowler, alleging improper contacts with him and frauds on the trial court involving him.

In a rather odd sequence of events, it appears that the Hoopers contacted Fowler (a local contractor) early on, asking for information about the cost of rebuilding their house. Fowler looked at the house and gave the Hoopers a generic cost of construction, plus a percentage for everything involved, due to the increase in materials and transportation costs since the original construction was completed. Mr. Hooper had one of his employees take that information, calculate amounts, and place it on one of Fowler's letterheads. That information was provided to Smallwood in discovery, represented as being Fowler's expert report.

Before trial, Skinner attempted to depose Fowler. Fowler did not appear. Fowler refused to return Mr. Hooper's telephone calls or appear pursuant to the Hoopers' subpoena, and ultimately refused to appear for any depositions whatsoever. Smallwood's trial subpoena succeeded in getting Fowler to appear at trial. Smallwood called Fowler as a witness. The Hoopers sought to take Fowler on voir dire: "We filed a motion to hold him in contempt of Court and if we can just take

4

him on voir dire outside the presence of the jury to figure out what he did to convince him to do what he did."  The trial court denied the request.

In his testimony, Fowler described the condition of the house and sidewalks and the footprint of the house.  Fowler ultimately opined that the main cause of the damage to the house was the Hoopers' addition of the sidewalks and flattening of the site.  He then testified, quite pointedly, that he had visited the site only once "thinking I was going to help a friend and also get a job at the same time, and it was probably to give—it would just be an estimated guess probably, gosh, four or five, six months ago.  I really don't know.  I didn't write it down.  I didn't document anything on that."

Fowler testified that he had never agreed to testify as an expert for the Hoopers, that initially he had no idea there was a lawsuit pending about the house, and that he told Mr. Hooper, "I'm going to tell you right now, Bobby Smallwood and I are friends.  You are my friend, and I do not want to get in the middle of this."[1]  Fowler also explained how the "report" came into existence.  Fowler also testified that he had no desire to be there, and was there only because he was afraid he would go to jail if he did not appear in response to a trial subpoena.

Although the Hoopers assert error by the trial court in allowing Fowler to testify, the issue is not addressed by their brief in any detail.  The purported error in allowing Fowler's testimony has not been adequately briefed, and we find nothing compelling that conclusion.

---

[1]Fowler testified that he threw the subpoena into his fireplace and burned it and that he did call Smallwood to tell him that he was not going to appear.

The Hoopers also complain that they were not allowed to voir dire Fowler, so that they could explore Fowler's refusal to respond to Mr. Hooper's calls, and his ignoring of a subpoena for a pre-trial deposition. There is no attempt to apply this argument to the case, beyond stating that, under Rule 705(b) of the Texas Rules of Evidence, it was an abuse of discretion to deny their request to conduct voir dire. *See* TEX. R. EVID. 705(b).

Rule 705(b) is exclusively directed at allowing voir dire "directed to the underlying facts or data upon which the opinion is based." That is neither what the Hoopers asked for, nor what they appear to have wanted then or later. There is nothing in the rule to support that position.

We find no error regarding witness Fowler.

*(2)     Limiting Testimony of Expert James Pearson Was Not Error*

The Hoopers also claim that the trial court erred in excluding testimony of appraiser Pearson. Pearson had been called by the Hoopers to testify that, because the estimated cost of repairing the house—that is, repairing the improvements on the land—exceeded the amount reportedly paid to build the house originally, the improvements currently had no value. After Smallwood's counsel was allowed to take Pearson on voir dire and the Hoopers' counsel was allowed to make an offer of proof, the trial court ruled that Pearson's testimony would not be allowed.

The Hoopers' argument on this point neither made references to the record, nor cited any authority for the proposition urged. Appellate briefs must contain appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(h), 38.2(a)(1). An argument may be waived if inadequately

6

briefed. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied).

We also observe that Pearson's testimony involved only issues of damages. Given the jury's verdict, no damages were recoverable by the Hoopers, making any such testimony on damages irrelevant.

We overrule this contention of error.

*(3)     No Error Was Committed Relative to Breach-of-Warranty Jury Issues*

The Hoopers also argue (with no reference to authority or any legal analysis) that the trial court erred by submitting a question on whether Smallwood breached express and implied warranties because the Hoopers established the breaches as a matter of law. An inadequately briefed issue may be waived on appeal. *See Fredonia State Bank*, 881 S.W.2d at 284 (discussing "longstanding rule" that point may be waived due to inadequate briefing). Accordingly, in the absence of authority or analysis, we will not consider these complaints. TEX. R. APP. P. 38.1(h). We also note that, given the substantially conflicting evidence in the record, no ultimate issue was proven conclusively, leaving the issues for the jury to decide.

*(4)     Legally and Factually Sufficient Evidence Supports the Jury's Verdict*

In two variations on a theme, the Hoopers contend that the jury's verdict finding them negligent is unsupported by sufficient evidence and that they conclusively proved that Smallwood was negligent. Their argument largely focuses on the causation element of a negligence cause of

action. We initially recognize that the question of the Hoopers' own negligence is not relevant to this review. The relevant question before us is whether sufficient evidence supports the jury's conclusion that Smallwood was not negligent. Although the argument is imprecise, it appears the Hoopers' complaint is that the evidence of proximate cause was lacking, that is, the evidence proves conclusively that Smallwood and Skinner were the proximate cause of the injury.[2]

When a party attacks the factual sufficiency of an adverse finding on an issue on which he or she has the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *In re Estate of Steed*, 152 S.W.3d 797, 806 (Tex. App.—Texarkana 2004, pet. denied).

In a review of this nature, we are required to consider and weigh all of the evidence, and we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Steed*, 152 S.W.3d at 806; *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). In conducting our review, we are mindful that the fact-finder was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

---

[2]The Hoopers also argue, in this context, that there was no evidence that they were responsible for the way in which the sidewalks and soil were installed. It is clear that they paid for the work and that they hired others to perform the job they laid out for them to do. For the Hoopers to now claim that they had no responsibility because someone else did as they directed is insupportable. Further, if they wished to claim that some other party followed their directions in a negligent manner, it was their responsibility to bring them into the suit as parties and attempt to recover from them. The Hoopers now state flatly in their appellate brief that the "independent contractor" was negligent. That argument is raised too late to be considered.

8

We will not pass on the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached. *Long v. Long*, 196 S.W.3d 460, 464 (Tex. App.—Dallas 2006, no pet.); *In re Estate of Henry*, 250 S.W.3d 518, 523 (Tex. App.—Dallas 2008, no pet.).

As most recently articulated by the Texas Supreme Court, the test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id*. at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id*. at 819. Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id*. at 822.

In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In a factual sufficiency review, we consider and weigh all the evidence and will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Vickery v. Vickery*, 999 S.W.2d 342, 376 (Tex. 1999); *Pool*, 715 S.W.2d at 635; *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

The elements of a negligence cause of action are a legal duty, a breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)). To establish proximate cause, a plaintiff must prove two elements, cause-in-fact and foreseeability. *Id.* Cause-in-fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Id.* at 799; *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991). The jury's negative answer to jury question number one as to Smallwood and Skinner represented a refusal to find from a preponderance of the evidence that negligence of either Smallwood or Skinner was a proximate cause of the occurrence. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.).

The following evidence is not substantially disputed:

(a)     the house is on ground having a fairly substantial slope;

(b)     the builder dug out an area of the clay slope, filled it with sand, and built the Hoopers' house atop the sand, retaining the slope, which he described as critical to proper drainage;

10

(c)     the Hoopers, without consultation with Smallwood, had another contractor build

sidewalks around the house and had at least twenty-one dump truck loads of soil

brought in and placed inside the sidewalk perimeter, effectively leveling the areas in

the front and back of the house; and

(d)     water collected under the slab causing expansion of the clay subsoil beneath the sand

and resulting in the heaving of the house's foundation.

Beyond those basics, there was considerable divergence of evidence and opinion.  A number

of witnesses provided a number of possible answers to the question of fault.  The witnesses'

testimony attempting to assess blame for the movement of the soil and the damage to the house is

all over the map.

The Hoopers fault Smallwood for providing no expert testimony that would set up a proper

standard of care that Smallwood allegedly met.  As the Hoopers were plaintiffs, this is not the proper

view.  The Hoopers provided experts that set up a number of inconsistent standards, and then a

number of inconsistent ways in which those varying standards might be met.  The problem is not that

there was no evidence of a proper standard of care.  The problem is that there were many different

proposed standards of care.

Smallwood testified that, in his opinion, the collection of water and subsequent heaving of

the soil was because of the Hoopers' flattening of the slope.[3]   When the complaints began,

---

[3]We recognize that the Hoopers now complain that Smallwood's testimony should be
disregarded because he was not named as an expert witness.  However, he was able to testify, and

11

Smallwood offered to remove the sidewalks and restore the slope at no cost to the Hoopers. Mr. Hooper refused the offer. Instead, Mr. Hooper dug a hole, found no water appeared in it, and concluded that this proved that the sidewalks and slope were not the source of the problem. The Hoopers later installed some French drains around the house.

Donald Illingworth testified that the flat site and later-added fill around the house was the problem and agreed that the sidewalks should have been taken out and the slope away from the foundation restored. He also testified that he believed that the beams were too far apart and that Smallwood should have consulted a soils or structural engineer before preparing the foundation. He also admitted, however, that foundation problems can exist even with such additional information and that he had previously written an expert report in a Lamar County case stating that a five-inch slab with no engineering or soil borings was reasonable for the area. Illingworth also opined that no fill dirt should have been used and that the slab should have been placed directly on the clay.

George Perdue did a boring around the house and found water. He also derided the decision to create a pad for the foundation by digging a hole and putting sand in it, stating that this would make the soil problems only worse. Perdue disagreed with Illingworth about building on the clay, and also disagreed with Newton Gorsha's opinion.

Gorsha, another engineer, testified that the clay beneath the house was shrinking or swelling because of water, and with no underground source, it would necessarily come from another source.

did so without objection. Any complaint about the nature of his testimony has not been preserved for our review. *See* TEX. R. APP. P. 33.1.

He agreed that grading was necessary to help water flow away from the house and that expansive clay was a problem. He also believed that an engineer should have been hired and that a soils report should have been obtained before building. He opined that native soil and more fill dirt under the foundation should have been used.

Skinner testified that he met with Mr. Hooper and Smallwood in early 2004 and discussed sidewalks with them. Skinner related that Smallwood wanted them removed, but Mr. Hooper refused. Skinner testified that the sidewalks were level with the house, and the flower beds were mounded up in such a fashion that water would run toward the house, with no way to get out. He also suggested that water is getting in around the perimeter, inside the sidewalks.

Gary Hilliard, a soils engineer, also testified (by deposition) that Smallwood did not have enough stiffening in the foundation, that the beams were too far apart, that the digging/sand combination was a poor way to construct such a house, and that Smallwood should have hired an engineer. When he was asked to opine that the house was not built in a prudent manner, however, he refused, stating that the vast majority of houses built in Lamar County use neither soils testing nor engineers, that nothing about the foundation fell below standards, and that everything done on the house was within standards. He also acknowledged that "Murphy always rules"—in other words, sometimes problems occur no matter what precautions are taken.

Fred Marshall, the Hoopers' expert for cost of repairs, believed water on the perimeter caused the problem.

Jerry Stephens, a concrete construction and foundation repair businessman (with over thirty years' experience in Lamar County) testified that he went to the house. Stephens testified that he would not give his usual lifetime warranty for foundation repair if the sidewalks around the Hooper house were not corrected and that, if he had been allowed to do the work early on, when he first went out, the cost would have been less.

Fowler testified that he saw the water-ponding problem and told Mr. Hooper to take action to get water away from the foundation.

John Bryant, Skinner's engineer, testified (by deposition) that he believed water around the perimeter contributed to the damage and that he assumed drains were put in because the sidewalks were trapping water. He equivocated at length, testifying that a number of factors could cause water to be trapped, including the sidewalks.

James Dawson, the individual overseeing construction projects for a local school district, noted that, even with soils testing, engineering, and the use of architects, he has still experienced substantial problems at times.[4]

In short, we have evidence, expert and otherwise, supporting both sides' positions about the cause of the problem. The evidence would sufficiently support either jury finding: that the problem

---

[4]The Hoopers argue that this witness' testimony should be disregarded as without any weight, because he is not an expert builder and works with a school district. It is, however, apparent from his testimony that the witness has expertise in connection with the construction of large buildings in the area. He is hardly inherently unbelievable as counsel suggests, and any weakness in his credentials or testimony will go to the weight of his testimony and credibility—matters exclusively for the determination of the jury.

was caused by Smallwood's foundation design or his digging out and putting in sand under the foundation or that the problem was caused by the Hoopers' addition of sidewalks, removal of the slope, and/or the additional fill dirt. There is opinion evidence that the design of the foundation was inadequate and, on the other hand, that the design was standard and adequate for the area. There is opinion evidence that engineers and soil tests should be used by any competent builder, testimony that they were not so used in Lamar County, and opinion evidence that, even if they had been used, they would not necessarily have avoided the problem.[5] There is evidence that Smallwood was a good and competent builder, with over 700 homes to his credit, and other opinion evidence that he was not too good or he would have involved engineers and soil testers in the process. The "experts" variously testified that the water came in from the perimeter around the house, that it did not, and that an unknown underground aquifer might be causing the problem. Experts opined that, either the soil should have been simply built on, that too much fill dirt was taken out, that no dirt should have been taken out, or that different types of fill should have been brought in.

Clearly, the evidence is in conflict. This Court is not a fact-finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986) (findings of fact are exclusive province of jury or trial court). It is not

_____

[5]The Hoopers also argue that there is no expert testimony that supports the jury's conclusion that the Hoopers were negligent. That particular argument is immaterial, as the question is whether Smallwood was negligent, and whether the finding that he was not is against the great weight and preponderance of the evidence.

15

within the province of this Court to interfere with the fact-finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Sw. Airlines Co. v. Jaeger*, 867 S.W.2d 824, 829–30 (Tex. App.—El Paso 1993, writ denied). Where there is conflicting evidence, the fact-finder's verdict on such matters is generally regarded as conclusive. *Edmunds v. Sanders*, 2 S.W.3d 697, 703 (Tex. App.—El Paso 1999, writ denied); *see Pool*, 715 S.W.2d at 634.

There is evidence that would support a rather large number of outcomes in this case. That being so, we cannot choose one over the other and disregard the jury's resolution of the disagreements among the witnesses. The jury's verdict was not reached against the great weight and preponderance of the evidence.

In related arguments, the Hoopers argue that Smallwood judicially admitted that he was negligent and that his admission thus conclusively proves his negligence. We have reviewed the salient testimony. The testimony is not an admission that he was negligent. In context, Smallwood made an entirely reasonable statement that, if he were building the house now, based on what he now knows, he would build it differently. In the second referenced statement, Smallwood stated that he thought he was building the house in a good and workmanlike manner, but apparently did not do so. Again, after observing testimony from a host of experts, and then being grilled at some length about the various problems of the house, and about all of the different ways in which the foundation could have been built, the response is entirely reasonable and is certainly not a judicial admission of negligence.

16

The Hoopers further argue, without reference to authority, that the jury's answers to the question of Smallwood's breach of warranty were unsupportable because the evidence established conclusively that Smallwood breached his warranty regarding the quality of his construction and the implied warranty of good workmanship. However, there is evidence, as previously noted, from multiple sources indicating that Smallwood's workmanship was good and met all standards of the area and that he did not act in such an unsupportable fashion as would prove breach as a matter of law.

The Hoopers conclude that argument by stating in two short paragraphs that Smallwood's representations were such to require a finding in the Hoopers' favor on their Deceptive Trade Practices Act claim. This segment likewise has no reference to relevant authority, does not set out the elements of such a claim, and makes no effort to apply a broad, general statement of the facts of this case. As noted above, the evidence is in conflict, and even were the briefing sufficient (which it is not), the argument would fail. These contentions are likewise overruled.

The Hoopers also complain because the jury answered with zero amounts for both damages or repair costs and attorney's fees. They argue that the evidence conclusively shows that this cannot be right. Under our resolution of the remainder of this appeal, we need not address these issues.

We overrule all contentions asserting the insufficiency of the evidence.

*(5)    Limiting Post-Trial Discovery Was Not an Abuse of Discretion*

The Hoopers also complain that they were not provided with sufficient post-trial discovery to allow them to fully develop their theory about fraud and conspiracy. Unlike the situation where

17

pretrial discovery is involved, there are no clear rules regarding the provision of post-trial discovery in this context. Generally, the scope of discovery relies on the properly exercised discretion of the trial court. *See In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam).

The Hoopers state they wanted more discovery of communications between counsel and communications with adjusters, billing records, and additional telephone records. As pointed out by Smallwood's attorney, parts of that request implicate attorney-client privilege, and counsel flatly denied that the requested emails existed. There is no articulated reason why additional (presumably earlier) telephone records would be of assistance to the Hoopers' arguments in favor of a new trial. At the hearing on the motion for new trial, the Hoopers introduced Fowler's telephone records from April 2006 through February 15, 2007; Smallwood's telephone records from December 24, 2006, through February 23, 2007; and Chadwick's (the attorney's investigator) telephone records from April 2006 through February 15, 2007. The trial was held from February 6 through February 9, 2007.

Although the Hoopers do not find the quantum of discovery allowed to be sufficient, it is difficult to conclude the trial court abused its discretion by limiting discovery as it did, and the Hoopers have provided no rationale suggesting such abuse. We overrule the issue.

*(6)    Refusing a New Trial Was Not an Abuse of Discretion*

The general rule is that a trial court has wide discretion in ruling on a motion for new trial and that its action will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds* by *Moritz v.*

18

*Preiss*, 121 S.W.3d 715, 721 (Tex. 2003).[6] The trial court does not have unbridled discretion to decide a motion for new trial, but instead must rely on guiding rules and principles in reaching its decision. *Mosser v. Plano Three Venture*, 893 S.W.2d 8, 10 (Tex. App.—Dallas 1994, no writ).

The Hoopers contend that, at the hearing on their motion for new trial, they showed that fraud was committed against the trial court by Smallwood and persons related to Smallwood, which necessarily required or justified granting a new trial. The alleged fraud on the court, the Hoopers assert, was perpetrated by Smallwood in contacting one of the Hoopers' experts, Fowler, and convincing him to not return Mr. Hooper's telephone calls, but to testify for Smallwood against the Hoopers at trial. The Hoopers raised these matters at trial, but had little information to bolster their position. Before the hearing on the Hoopers' motion for new trial, they obtained discovery about a number of telephone calls that had been placed between Fowler and Smallwood before trial. The Hoopers argue now that, based on that information, they proved a conspiracy to commit fraud on the trial court and, thus, the trial court erred by denying their motion for new trial.

---

[6]Similarly, if we classify this as involving newly discovered evidence, the standard for our review is the same: we also review a trial court's ruling on a motion for new trial based on newly discovered evidence for an abuse of discretion. *Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 629 (Tex. App.—Dallas 2004, pet. denied). A party seeking a new trial on the ground of newly discovered evidence must show the trial court that (1) the evidence has come to his or her knowledge since the trial, (2) it was not owing to the want of due diligence that it did not come sooner, (3) it is not cumulative, and (4) it is so material that it would probably produce a different result if a new trial were granted. *Wheeler v. Greene*, 194 S.W.3d 1, 6 (Tex. App.—Tyler 2006, no pet.); *Fantasy Ranch, Inc. v. City of Arlington*, 193 S.W.3d 605, 615 (Tex. App.—Fort Worth 2006, pet. denied); *see Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 240 (Tex. App.—Dallas 2000, pet. denied), (citing *Jackson*, 660 S.W.2d at 809).

19

In extensive and heated arguments, the Hoopers connect the alleged frauds on the court with asserted improper contacts with Fowler and allegedly resulting false testimony. But the Hoopers' extensive and energetic efforts to attempt to expose opposing counsel's alleged improper contact with Fowler is, in the final analysis, "full of sound and fury, [s]ignifying nothing." WILLIAM SHAKESPEARE, THE TRAGEDY OF MACBETH, act 5, sc. 5. The underlying problem with the Hoopers' efforts regarding Fowler is that the evidence amply supports, even strongly suggests, the conclusion that Fowler was not a retained expert for the Hoopers. Unless Fowler was the Hoopers' *retained* expert witness,[7] contacts with him by Smallwood's counsel, even if any had been proven, would have been entirely proper.

Fowler is a building contractor in the area, and there is evidence that he and Mr. Hooper had personally met and discussed possible costs to repair the house. However, the only thing provided by the Hoopers in discovery in connection with Fowler was a list of costs for the various repairs, which they indicated was Fowler's expert report; yet Fowler unequivocally testified that he had not prepared a report. Fowler was also clear that he never agreed to be the Hoopers' expert witness. He maintained all along that he did not wish to be involved in this dispute.

Second, although the Hoopers complain that Fowler's appearance at trial was a surprise, it is difficult to give that complaint any credence: he was named as a witness by the Hoopers, as well as by Skinner.

---

[7]The word "retain" is defined in relevant part as "to keep in one's pay or service . . . to employ by paying a retainer." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1063 (11th ed. 2006).

Third, there is little that would prevent the opposing party from contacting a named witness, expert or otherwise, before trial. The only limitation would forbid opposing counsel from contacting a retained expert witness without permission, which we have already said was not applicable here.

Fourth, it is obvious that Fowler had no confidential information, that he had no insight into litigation strategies, or even more than one meeting with Mr. Hooper. There is no confidentiality agreement, there was no long-standing special relationship, no fee paid, and no attorney work product involved.

Fowler's testimony was that, from the very beginning, he had (and articulated that he had) no desire to be involved in this litigation. Fowler had testified at the trial that he had initially thought that the Hoopers wanted only some repair work done. He said he had asked the Hoopers if there was litigation between them and Smallwood and was told there was not. Fowler testified that he never agreed to be an expert for the Hoopers and was not paid to be one. He indicated that he told the Hoopers' attorney, when told that they were listing him as an expert, that he would not act as one, that he did not prepare the report, and that Fowler had initiated contact with Smallwood, not the other way around.

The fact that a witness, even an expert witness, for one side talks willingly to the other side is not necessarily improper. There are several cases discussing the impact of contact and discussions between experts for one side and counsel or parties from another. They uniformly find that where

nonretained expert witnesses are concerned, such meetings are not improper.[8] *Durst v. Hill Country Mem'l Hosp.*, 70 S.W.3d 233 (Tex. App.—San Antonio 2001, no pet.) (defendant's treating physician meeting alone with plaintiff's counsel not improper, though some worries articulated about possible revealing of otherwise unrelated and confidential information under doctor-patient privilege); *Hogue v. Kroger Store No. 107*, 875 S.W.2d 477 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (same); *cf. In re Collins*, 224 S.W.3d 798 (Tex. App.—Tyler 2007, no pet.) (same; but trial court could issue protective order because doctors might know nonrelevant and privileged facts).

One recent case from the Corpus Christi Court of Appeals discusses retained experts at some length in the context of explaining what is required to justify disqualifying one and refusing to permit him to testify. *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436 (Tex. App.—Corpus Christi 2006, pet. denied). It also is not directly on point, as it discusses retained experts and confidential relationships, caused by providing confidential or privileged information to the expert by the party. Neither situation exists here. Even in the context of retained experts, however, the Corpus Christi court recognized that experts should not be too easily disqualified, because "unscrupulous attorneys may attempt to create relationships with numerous potential experts

---

[8]This is readily distinguishable from the wrongdoing described in Rule 4.02(b) of the Rules of Professional Conduct, which provides that "a lawyer shall not, personally or by representative, cause another to communicate about the subject of representation with a person . . . a lawyer knows *to be employed or retained* for the purpose of conferring with or advising another lawyer about the subject of the representation, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02(b) (emphasis added).

at a nominal fee hoping to preempt the ability of their adversaries to obtain expert assistance." *Id.* at 448–49.

The contacts between Fowler and Smallwood have not been shown to be wrongful. There is no evidence that Fowler changed his testimony because of Smallwood, other than the speculative and imaginative inferences proposed by counsel for the Hoopers. Further, part of the Hoopers' argument is based on the underlying notion that opposing counsel was involved in some sort of collusion and that Fowler was a retained expert with some sort of inside knowledge that was used by counsel for Smallwood's benefit. No evidence suggests that Fowler was a retained expert, and both sides acknowledge that Fowler would not even talk to Mr. Hooper. It is thus unlikely that Fowler had access to any inside or privileged information. Fowler's refusal to appear for depositions is certainly not laudable—in fact, he was ultimately held in contempt for his failure to appear—but the evidence suggests that his behavior shows more a desire not to be involved or a disgust with the entire proceeding than anything else.

The Hoopers focus on cell phone records indicating that there were twenty-two telephone calls made between Fowler and Smallwood before trial, and on the content of some of those calls concerning the "water trapping flower beds" and the creation of a repair estimate. The Hoopers listed the telephone calls, and provided evidence, at the hearing on the motion for new trial, from the post-trial deposition of Fowler and a transcription of an interview with Smallwood in which it appears that Fowler admitted talking to Smallwood about the house, the problems with the house,

and the problems with the drainage. The Hoopers complain that this is different from Fowler's testimony at trial: that he had only talked to Smallwood three times about the house.

The testimony, however, is hardly one-sided. There is also evidence that a number of the twenty-two calls were likely telephone tag which began when Fowler went by Smallwood's office and asked him to call. According to the process server's affidavit, he called Fowler a number of times before trial to keep him updated on when trial would eventually begin and when he would actually need to appear. It seems at least possible that more than three contacts occurred that had at least some discussion of the house involved. Even multiple contacts, however, are not problematic under these facts.

Under this evidence, it is not apparent that the trial court acted outside the scope of its discretion in denying the motion for new trial.

Counsel also mentions several other items which appear intended to support his equitable argument that a new trial should have been granted in the interest of justice. He argues that he proved that counsel breached his ethical duties because Fowler lied at trial about the number of contacts he had made with Smallwood or his counsel, James Rodgers, and that Rodgers knew about the lie and failed to take action to correct it. There was evidence at the hearing on the motion for new trial to the contrary, and also testimony that, when the process server who had served Fowler began to tell Rodgers about Fowler's furious tirade after being informed that he was named as a witness in the case, Rodgers told Jim Chadwick that he wanted to hear nothing about what Fowler had to say except from the stand.

Counsel for the Hoopers complains because the process server (Chadwick) used by Rodgers talked to Fowler repeatedly before trial. Chadwick is married to Smallwood's daughter. Again, as previously discussed, Fowler was not a retained expert. If Fowler was willing to talk, there was no ethical or legal impediment to keep an investigator from talking to him.

Counsel for the Hoopers complains about Rodgers' leading questioning of Fowler, but provides no real argument. It appears that counsel is attempting to use that as some sort of support for his main complaint, that Rodgers necessarily knew what Fowler was going to testify to and was having to lead him into it.

The Hoopers also suggest that counsel for Skinner, Jerry Ewing, acted in a manner that supported the conspiracy because he opposed post-trial discovery. In fact, the trial court twice quashed a subpoena and refused to "produce documents indicating the nature of the Fowler conspiracy." Ewing was questioned at the hearing, but his statements were innocuous.

Counsel for the Hoopers also complains that, during a break in Fowler's cross-examination at trial, Rodgers pulled Fowler aside and talked to him. The record shows counsel questioning Fowler about this, with the following exchange:

Q. . . . During the break from 10:00 to 10:20 – excuse me 10:20 to 10:22 you talked to Mr. Rodgers?

A. Right.

Q. What did you talk about?

A. What did I talk about?

25

Q.    Yes, sir.

A.    He was kind of concerned about you were [sic] trying to make me say that they [Smallwood] had contacted me.  I haven't talked to any of these people.

There was no other discussion, no complaint raised, counsel merely continued on with his questioning.  Neither error nor harm is shown, and counsel's attempts to show the existence of a conspiracy from such slender comments is at the very least imaginative.

The Hoopers also complain because their witness (who they did not call) was called to testify by Smallwood without prior warning.  They seem to argue that this is inappropriate because the parties had agreed to tell each other who they were going to call and the sequence on the day before each was called to testify.  However, Smallwood has directed us to direct statements by the Hoopers' counsel that, although the trial court had asked them to reach such an agreement, they had not.

The Hoopers also complain that Smallwood had not identified Fowler as a trial witness as required by an interrogatory.  However, it appears that Skinner had done so, and had the Hoopers' counsel complained about this failure in a timely fashion, the witness could still have been brought because of Skinner's designation.

Nothing shows any impropriety by Rodgers.  We are not convinced, either by the arguments raised nor by the large number of unrelated comments made by counsel for the Hoopers, that the trial court abused its discretion by denying the motion for new trial.  The contention of error is overruled.

26

We affirm the judgment.

_____ Josh R. Morriss, III
Chief Justice

Date Submitted:    August 13, 2008
Date Decided:    October 22, 2008