

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00098-CV

_____

JOHN KEAHEY, Appellant

V.

WARREN RUTTY AND ELISA RUTTY, Appellees

On Appeal from the 3rd Judicial District Court
Henderson County, Texas
Trial Court No. 2009C-256

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A dog owned by Warren and Elisa Rutty attacked and bit their neighbor, John Keahey, who brought suit in Henderson County, Texas, for damages he sustained.[1]   Pursuant to a jury's finding of sixty percent contributory negligence on Keahey's part, the trial court entered a take-nothing judgment in favor of the Ruttys.   Keahey appeals this judgment, alleging that because there was no evidence, or factually insufficient evidence, to support the jury's finding of contributory negligence, the trial court erred in denying his motion for directed verdict, denying his motion for new trial, and entering judgment against him.   Because we conclude the evidence was legally and factually sufficient to support the jury's finding of contributory negligence, the dispositive issue in this case,[2] we affirm the trial court's judgment.

## I.      Standard of Review

Because Keahey is attacking the legal sufficiency of an adverse finding on the issue of his negligence, for which he did not have the burden of proof, he must demonstrate that there is no evidence to support the adverse finding.   *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469–70 (Tex. App.—Corpus Christi 2008, pet. denied).   In determining this no-evidence issue, we view all of the evidence in the record in the

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

[2]The main arguments in Keahey's brief complain of the submission of the contributory negligence question to the jury. Because there was no objection to the court's charge, we decline to address this issue.  *See* TEX. R. APP. P. 33.1.

2

light most favorable to the Ruttys, consider only the evidence and inferences that tend to support the jury's finding of contributory negligence, and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *Merrell Dow Pharms.*, *Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Hooper v. Smallwood*, 270 S.W.3d 234 (Tex. App.—Texarkana 2008, pet. denied).

A no-evidence point will be sustained when the evidence offered to prove a vital fact is no more than a mere scintilla. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l*, *Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 262 (Tex. 2002). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). If we find some probative evidence, we will test the factual sufficiency of that evidence.

When reviewing a factual sufficiency challenge, we consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the verdict should be set aside. *Plas-Tex*, *Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We set aside a verdict only if the evidence is

3

so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Because the jury remains the sole judge of witnesses' credibility and the weight to be given their testimony, we will not substitute our judgment for that of the jury during this analysis. *Golden Eagle Archery*, *Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Pool*, 715 S.W.2d at 635.

Sufficiency of the evidence must be reviewed using the definitions and instructions contained in an unobjected-to jury charge. *Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 204 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Larson v. Cook Consultants*, *Inc.*, 690 S.W.2d 567, 568 (Tex. 1985); *Allen v. Am. Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex. 1964)). In this case, the jury found that the negligence of Elisa and Keahey was a proximate cause of the injury. The jury responded to the apportionment question by assigning forty percent responsibility to Elisa and sixty percent to Keahey.

## II. Legally and Factually Sufficient Evidence Supported the Finding of Contributory Negligence

The Ruttys owned two dogs, a black Labrador retriever puppy named Lucy and a chow named Lucky. The dogs were normally kept in a secured, fenced area. On a particularly hot day, Elisa tied both dogs to a tree in the front yard because the fenced area harbored no shade. Lucy's and Lucky's leashes were tied together with a clothesline, the clothesline was knotted to a chain, and the chain was tied to the tree. Lucy chewed through the clothesline, setting both dogs free.

4

Keahey was taking out the trash when he spotted both dogs in his driveway. The Ruddys' and Keaheys' homes were split by a highway containing a fifty-mile-per-hour speed limit. Because Keahey did not want the dogs to get run over, he took the matter into his own hands. Keahey noticed that both dogs had a collar and a leash. He testified that he took Lucy by the leash, let Lucky walk on his own, and headed down the driveway toward the Ruttys' house. Keahey stated he did not want to handle Lucky because he believed the dog to be aggressive and had been warned by Warren that the dog would bite. He testified,

> [W]hen I took my eye off of Lucky, I don't know why it was, but I just saw that brown streak just coming at me. . . . I started going backwards as fast as I could. Because I thought if I got further away from him maybe he would quit. And I was already around ten to twelve feet away from him, that was about as close as I ever got to him, until he attacked me.
>
> . . . .
>
> [H]e just kept charging me and all of this took place like that, this is seconds. And any way, then he just leaped at me, and he was flying through the air coming at my face, more or less, and I put my hand out in front of me to protect my face, and he grabbed my hand and then both of us, 60 pounds of dog flying through the air, and an old man 200 pounds going backwards, we hit the drive way.
>
> . . . .
>
> And I think that it knocked me out for a few seconds, but I don't know how long, because I was out there by myself. But whenever I came to my senses I was on the ground, Lucky was standing there looking at me in the face, and when you're going to die, you review everything in milliseconds, and I thought, my God, he's going to kill me now. And I thought -- I looked at this hand and it was just pouring blood, . . . . So I got up as quick as I could and . . . started . . . in the house.

Keahey received emergency treatment for a dog bite to his hand.

Keahey told the jury that "when I got up on the porch then I noticed that the leash was still on my hand and her collar was there empty from Lucy. So whenever I fell, I fell so hard, that it just jerked everything off of Lucy's head." The jury heard from the Ruttys that the red and black leash returned to them after the incident belonged to Lucky, not Lucy, and Lucy was wearing a "chokie chain" because she was a puppy.[3] Elisa testified that Keahey's wife, Sandra, came to return the leash the day after the incident. Elisa said, "[W]hen [Sandra] brought me . . . Lucky's leash, . . . she told me this is Lucky's leash, and she put it in my hand." At trial, Keahey and his wife both testified the leash they brought over belonged to Lucy. Keahey said it would be a bad idea to take the leash of an unfamiliar dog.

Viewing the evidence in a light most favorable to the Ruttys, we conclude that more than a scintilla of evidence existed to support a rational jury's decision that Keahey was negligent. According to Keahey's testimony, he believed Lucky was an aggressive dog that would bite.[4] Nevertheless, instead of calling the Ruttys, he attempted to guide both dogs back to their yard. Keahey's description of the leash he was holding matched the description of Lucky's leash, not Lucy's. The jury heard Keahey testify that a reasonably prudent person would not handle the leash of an unfamiliar dog. Warren testified Keahey "might have gotten tangled up in the leash and was trying to get it off of the dog, because he was tangled up in the leash." We find the evidence legally sufficient to support the judgment.

[3]The seventy-five-year old Keahey had issues with vision.

[4]This assertion was hotly contested, as the Ruttys testified the dog was not aggressive and would not bite.

We now review Keahey's challenge to the factual sufficiency of the evidence. Keahey told the jury he knew Lucky was aggressive. Even believing his testimony that he was holding Lucy's leash, the jury could have decided Keahey was negligent in failing to call Elisa to remove the dogs from his driveway. By attempting to guide an aggressive dog, the jury could have found Keahey negligent in taking the matter into his own hands. Given Keahey's own testimony, we cannot say that the jury's finding was so against the great weight and preponderance of the evidence that it was clearly wrong and unjust. *Francis*, 46 S.W.3d at 242. We find the evidence factually sufficient to support the judgment.

Because we find the evidence both legally and factually sufficient to support the jury's finding of contributory negligence, we overrule Keahey's points of error.

## III.    Conclusion

We affirm the trial court's judgment.


                                                Bailey C. Moseley
                                                Justice


Date Submitted:     April 20, 2011
Date Decided:       April 21, 2011


7