In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00098-CV

                                                ______________________________

 

 

                                           JOHN KEAHEY,
Appellant

 

                                                                V.

 

                       WARREN RUTTY AND ELISA RUTTY, Appellees

 

 

                                                                                                  


 

 

                                         On Appeal from the 3rd Judicial District Court

                                                         Henderson
County, Texas

                                                        Trial Court
No. 2009C-256

 

                                                    
                                              

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            A
dog owned by Warren and Elisa Rutty attacked and bit their neighbor, John
Keahey, who brought suit in Henderson County, Texas, for damages he sustained.[1]  Pursuant to a jury’s finding of sixty percent
contributory negligence on Keahey’s part, the trial court entered a take-nothing
judgment in favor of the Ruttys.  Keahey
appeals this judgment, alleging that because there was no evidence, or
factually insufficient evidence, to support the jury’s finding of contributory
negligence, the trial court erred in denying his motion for directed verdict,
denying his motion for new trial, and entering judgment against him.  Because we conclude the evidence was legally
and factually sufficient to support the jury’s finding of contributory
negligence, the dispositive issue in this case,[2] we
affirm the trial court’s judgment.  

I.          Standard of Review 

            Because
Keahey is attacking the legal sufficiency of an adverse finding on the issue of
his negligence, for which he did not have the burden of proof, he must
demonstrate that there is no evidence to support the adverse finding.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Ins. Network of Tex. v. Kloesel, 266 S.W.3d 456, 469–70 (Tex.
App.—Corpus Christi 2008, pet. denied). 
In determining this no-evidence issue, we view all of the evidence in
the record in the light most favorable to the Ruttys, consider only the
evidence and inferences that tend to support the jury’s finding of contributory
negligence, and disregard all evidence and inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001); Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Burroughs
Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995); Hooper v. Smallwood, 270 S.W.3d 234 (Tex. App.—Texarkana 2008, pet. denied).  

            A no-evidence point will be sustained when the
evidence offered to prove a vital fact is no more than a mere scintilla.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998).  More
than a scintilla of evidence exists if the evidence furnishes some reasonable
basis for differing conclusions by reasonable minds about the existence of a
vital fact.  Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co. of
Pittsburgh, PA, 77 S.W.3d 253, 262 (Tex. 2002).  Evidence is legally sufficient if it “would
enable reasonable and fair-minded people to reach the verdict under review.”  Lambright
v. Trahan, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied)
(citing City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005)).  If we find
some probative evidence, we will test the factual sufficiency of that evidence.

            When
reviewing a factual sufficiency challenge, we consider, weigh, and examine all
of the evidence in the record, both supporting and against the finding, to
decide whether the verdict should be set aside. 
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986).  We set aside a verdict
only if the evidence is so weak or if the finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and unjust.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  Because the jury remains the sole judge of
witnesses’ credibility and the weight to be given their testimony, we will not
substitute our judgment for that of the jury during this analysis.  Golden
Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003); Pool,
715 S.W.2d at 635. 

            Sufficiency
of the evidence must be reviewed using the definitions and instructions
contained in an unobjected-to jury charge.  Soto v. Seven Seventeen HBE Corp., 52
S.W.3d 201, 204 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing
Larson v. Cook Consultants,
Inc., 690 S.W.2d 567, 568 (Tex. 1985); Allen v. Am. Nat’l Ins.
Co., 380 S.W.2d 604, 609 (Tex. 1964)). 
In this case, the jury found that the negligence of Elisa and Keahey was
a proximate cause of the injury.  The
jury responded to the apportionment question by assigning forty percent
responsibility to Elisa and sixty percent to Keahey.  

II.        Legally
and Factually Sufficient Evidence Supported the Finding of Contributory Negligence

 

            The Ruttys owned
two dogs, a black Labrador retriever puppy named Lucy and a chow named
Lucky.  The dogs were normally kept in a
secured, fenced area.  On a particularly
hot day, Elisa tied both dogs to a tree in the front yard because the fenced
area harbored no shade.  Lucy’s and
Lucky’s leashes were tied together with a clothesline, the clothesline was
knotted to a chain, and the chain was tied to the tree.  Lucy chewed through the clothesline, setting
both dogs free.

            Keahey was taking
out the trash when he spotted both dogs in his driveway.  The Ruddys’ and Keaheys’ homes were split by
a highway containing a fifty-mile-per-hour speed limit.  Because Keahey did not want the dogs to get
run over, he took the matter into his own hands.  Keahey noticed that both dogs had a collar
and a leash.  He testified that he took
Lucy by the leash, let Lucky walk on his own, and headed down the driveway
toward the Ruttys’ house.  Keahey stated
he did not want to handle Lucky because he believed the dog to be aggressive
and had been warned by Warren that the dog would bite.  He testified,

[W]hen I took my eye off of Lucky, I don’t know
why it was, but I just saw that brown streak just coming at me. . . . I started
going backwards as fast as I could. 
Because I thought if I got further away from him maybe he would
quit.  And I was already around ten to
twelve feet away from him, that was about as close as I ever got to him, until
he attacked me.

 

            .
. . . 

 

            [H]e
just kept charging me and all of this took place like that, this is
seconds.  And any way, then he just
leaped at me, and he was flying through the air coming at my face, more or
less, and I put my hand out in front of me to protect my face, and he grabbed
my hand and then both of us, 60 pounds of dog flying through the air, and an
old man 200 pounds going backwards, we hit the drive way. 

 

            .
. . . 

 

            And
I think that it knocked me out for a few seconds, but I don’t know how long,
because I was out there by myself.  But
whenever I came to my senses I was on the ground, Lucky was standing there
looking at me in the face, and when you’re going to die, you review everything
in milliseconds, and I thought, my God, he’s going to kill me now.  And I thought -- I looked at this hand and it
was just pouring blood, . . . . So I got up as quick as I could and . . . started
. . . in the house. 

 

Keahey received emergency
treatment for a dog bite to his hand.  

            Keahey
told the jury that “when I got up on the porch then I noticed that the leash
was still on my hand and her collar was there empty from Lucy.  So whenever I fell, I fell so hard, that it
just jerked everything off of Lucy’s head.” 
The jury heard from the Ruttys that the red and black leash returned to
them after the incident belonged to Lucky, not Lucy, and Lucy was wearing a
“chokie chain” because she was a puppy.[3]  Elisa testified that Keahey’s wife, Sandra,
came to return the leash the day after the incident.  Elisa said, “[W]hen [Sandra] brought me . . .
Lucky’s leash, . . . she told me this is Lucky’s leash, and she put it in my
hand.”  At trial, Keahey and his wife
both testified the leash they brought over belonged to Lucy.  Keahey said it would be a bad idea to take
the leash of an unfamiliar dog.  

            Viewing
the evidence in a light most favorable to the Ruttys, we conclude that more
than a scintilla of evidence existed to support a rational jury’s decision that
Keahey was negligent.  According to
Keahey’s testimony, he believed Lucky was an aggressive dog that would bite.[4]  Nevertheless, instead of calling the Ruttys,
he attempted to guide both dogs back to their yard.  Keahey’s description of the leash he was
holding matched the description of Lucky’s leash, not Lucy’s.  The jury heard Keahey testify that a
reasonably prudent person would not handle the leash of an unfamiliar dog.  Warren testified Keahey “might have gotten
tangled up in the leash and was trying to get it off of the dog, because he was
tangled up in the leash.”  We find the
evidence legally sufficient to support the judgment.  

            We
now review Keahey’s challenge to the factual sufficiency of the evidence.  Keahey told the jury he knew Lucky was
aggressive.  Even believing his testimony
that he was holding Lucy’s leash, the jury could have decided Keahey was
negligent in failing to call Elisa to remove the dogs from his driveway.  By attempting to guide an aggressive dog, the
jury could have found Keahey negligent in taking the matter into his own
hands.  Given Keahey’s own testimony, we
cannot say that the jury’s finding was so against the great weight and
preponderance of the evidence that it was clearly wrong and unjust.  Francis,
46 S.W.3d at 242.  We find the evidence
factually sufficient to support the judgment. 


            Because
we find the evidence both legally and factually sufficient to support the
jury’s finding of contributory negligence, we overrule Keahey’s points of
error.  

III.       Conclusion


            We
affirm the trial court’s judgment. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April 20, 2011

Date Decided:             April 21, 2011

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.

 





[2]The
main arguments in Keahey’s brief complain of the submission of the contributory
negligence question to the jury.  Because
there was no objection to the court’s charge, we decline to address this
issue.  See Tex. R. App. P. 33.1. 





[3]The
seventy-five-year old Keahey had issues with vision.  

 





[4]This
assertion was hotly contested, as the Ruttys testified the dog was not
aggressive and would not bite.