In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00230-CR

                                                ______________________________

 

 

                                    JAMES BLAKE SPINKS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 1021437

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            James Blake Spinks’ evening of
drinking at the Texas Lounge in Sulphur Springs,
Texas was the genesis of the events causing the death of a fellow patron of the
Lounge, twenty-one-year-old Nathan Paul Spataro.  After Spinks’ alcoholic indulgence and
despite being warned that he was too drunk to drive, Spinks left the bar at the
midnight closing time and drove away in his vehicle.  On a dark road leading from the Lounge, his
vehicle collided violently with a large object, shattering the windshield.  Spinks maintained that he did not call the
police because he said that he believed that his vehicle had struck a deer.  Tragically for him and for Spataro,
the object which Spinks had struck was Spataro, who
was killed instantly.  After a jury
convicted Spinks of an accident involving personal injury or death,[1] he was sentenced to ten
years’ imprisonment and was ordered to pay a $10,000.00 fine.  On appeal, Spinks maintains that the evidence
is insufficient to support the judgment, and argues that the trial court erred
in admitting statements made by Spinks “prior to Miranda[2]
Warnings and without audio recording.” 
Because the evidence is sufficient to support the conviction, and Spinks’
brief is inadequate to preserve the second issue for our review, we affirm the
trial court’s judgment. 

I.          Sufficient
Evidence Supported Spinks’ Conviction 

            Doris Evelyn Gray met Spinks at
about 4:30 on the afternoon of the accident when she went to visit her
daughter, Juanita Joyce Gray, who was working at the Lounge.  Spinks was drinking “Crown with a splash of
Coke,” and he remained at the Lounge for the remainder of the evening and a
good portion of the night.  Dudley
Calhoun, karaoke host at the Texas Lounge, testified that Spataro
joined Spinks at the establishment. 
Security guard Don McKenzie described Spinks as obviously intoxicated
and warned him not to drive his vehicle. 
Spinks ignored the warning and drove his vehicle, shortly thereafter
running down Spataro with it, killing Spataro instantly.  

            Darrell Edwards also left the Texas
Lounge at approximately midnight and “[w]ent straight
over to Burton’s, across the road.”  Edwards
and a friend remained at that local eatery for two hours.  According to recordings retrieved from video
surveillance cameras, Spinks arrived at Burton’s at 1:25 a.m. where, Edwards
testified, Spinks “ordered a burger to go, burger and fries, and he stood up
there and played a little, old quarter game for a few minutes and, you know,
just messed around” for about an hour. 
As Edwards was leaving the establishment “a few minutes after 2:00,” he
saw Spinks’ “car there in a handicapped parking lot and noticed the windshield
was busted.”  Spinks came outside and
told Edwards that he had hit a deer while driving.  The video surveillance recording revealed
that Spinks remained at Burton’s until 2:21 a.m.  

            At 2:47 a.m., Doris was visiting
with Juanita when Juanita received a telephone call from Spinks.  Doris was able to overhear the telephone
conversation between Spinks and Juanita and testified that Spinks had said that
“there’s been some problems” and “I need you to hide me out.”  Juanita testified that Spinks “freaked out”
and told her during the telephone conversation “that he had hit someone.”  At the end of the conversation, Doris and
Juanita “went down the road to look for someone that [Spinks] had supposedly
hit.”  En route to the location of the
accident, Juanita called the police.  

            Doris and Juanita saw no signs of an
accident during their initial search and, believing that Spinks was playing a
trick on them, began to return home.  On
the way home, they saw Spinks “walking down the road,” but decided to drive
past him.  Juanita received another
telephone call from Spinks, wherein she expressed her negative opinion of the
joke she believed was being played. 
Spinks responded, “I hit somebody. 
Come look at my car.”  Doris and
Juanita “met him up where his car was” and saw that the windshield “was bashed
in completely.”  Doris went on to relate
that Spinks “was extremely upset.  He had
said he had hit someone and he didn’t want to go back to jail.”  Doris testified to the following conversation
with Spinks:

            I went back to the car, to the back
of the car where he was, and I said, . . .             “Where
did you hit this person?” 

            And he says, “On the road.”

            And I said, “Well, did you stop?”

            “No, I -- I didn’t”

            And I said, “Okay this person is
hurt.  You’ve hit someone, and he’s
hurt.            I
want you to sit right there, and don’t you get up, don’t you move. . . .

            . . . .

            . . . And as we were leaving he
looked up at me, and he said, “I’m not going back to jail.”

 

In
hindsight, Juanita believed that when they had seen Spinks walking down the
road, he had been looking for the person he had struck with his car.  As Doris and Juanita “started slowly going
down the service road,” they saw a “a flip-flop, a pair of glasses and a hat,
and we stopped.”[3]  The two exited their vehicle and began
searching the “dark” road using illumination from their cell phones and Juanita
discovered Spataro’s lifeless body.  Although Spataro was
wearing a long-sleeved black T-shirt and dark blue jeans, Juanita testified
that she had no difficulty spotting the body once she was “off the road” “because
I was looking for somebody, and he was on a bed of rocks.”  She also stated that the tall grass in which
the body was found did not conceal it from view. 

            City of Sulphur
Springs Police Lieutenant Jason Ricketson was
dispatched to the scene of the accident at 3:06 a.m.  He was met by Juanita and Doris, who had
located Spataro “in the actual bar ditch,” which
sustained a growth of grass “12 to 16 inches” high.  Ricketson described
the area as “fairly dark.”  He opined
that when Spataro was hit, he “went up on top of the
vehicle and onto the windshield.”  Spataro had died instantaneously and “didn’t appear to have
any signs of life.”  J. K. Townsend-Parchman,
M.D., an employee of the Dallas County Medical Examiner who conducted the
autopsy report, testified that “as soon as he [Spataro]
got that very large amount of force applied to his head, he was, for all
intents and purposes, gone.”  Townsend-Parchman indicated that there was no medical care that
could have been given to Spataro after the trauma
that may have kept him alive. 

            At the same time Ricketson
was sent to the scene of the accident, Sulphur
Springs police officer Lonnie Taylor was dispatched to the Lounge parking
lot.  Spinks returned to the accident scene,
approached Taylor and stated, “I didn’t see the guy walking down the middle of
the road,” and, “I knew I hit something, but I didn’t know what it was.”  Taylor “saw the vehicle had quite a bit of
damage, even on the windshield.”  Taylor
testified Spinks made the following statement after the Miranda warning:

[Spinks]
advised me he would speak to me and began telling me that he stopped his
vehicle and looked around after he hit something.  [Spinks] informed me that he was traveling
down East Industrial when he hit something. 
[Spinks] told me that he did not know what he hit, so he stopped the
vehicle and got out and looked around. 
[Spinks] advised that he did not see anything so he got back into the
vehicle and drove to Burton’s Family Restaurant to pick up some food and
returned back to the Texas Lounge. 
[Spinks] then informed me that he went back to the accident site where
he looked around again and did not find what he hit.

 

            Taylor “inspected the vehicle,
noticed there was blood and hair on the windshield,” almost half of which had been
completely shattered.  After conducting
field sobriety tests, Taylor believed that Spinks was intoxicated and
transported him to the Hopkins County Memorial Hospital, where a blood sample
was taken from Spinks.  Spinks’ blood
alcohol concentration was .13.  Under
Texas law, a person is intoxicated if he has a blood-alcohol concentration of
.08 or more.  Tex. Penal Code Ann. § 49.01(2)(B) (West 2011). 

            Spinks believes this evidence was
legally insufficient to sustain his conviction for accident involving personal
injury or death.  In reviewing the legal
sufficiency of the evidence, we review all the evidence in the light most
favorable to the jury’s verdict to determine whether any rational jury could
have found the essential elements of the charged offense.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref’d)
(citing Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007)).  Our
rigorous legal sufficiency review focuses on the quality of the evidence
presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury “to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 318–19).

            Legal sufficiency of the evidence is
measured by the elements of the offense as defined by a hypothetically-correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically-correct jury charge “sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.”  Id.

            Section 550.021(a) sets out the
following requirements:

            (a)        The
operator of a vehicle involved in an accident resulting in injury to or death
of a person shall:

                        (1)        immediately stop the vehicle at the
scene of the accident or as close to the scene as possible;

                        (2)        immediately return to the scene of the
accident if the vehicle is not stopped at the scene of the accident; and

                        (3)        remain at the scene of the accident
until the operator complies with the requirements of Section 550.023.[4]

 

Tex. Transp. Code Ann.
§ 550.021(a).  These requirements are
called “failing to stop,” “failing to return,” and “failing to remain,” and are
viewed as “alternate methods of committing the same offense.”  Huffman
v. State, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008).  The elements of the offense of accident
involving personal injury or death are:  (1)
an operator of a motor vehicle, (2) involved in an accident, (3) resulting
in injury or death of any person, and (4) intentionally and knowingly (5) fails
to stop or render reasonable assistance. 
See Henry v. State, No. 06-11-00010-CR,
2011 WL 3890736, at *2 (Tex. App.—Texarkana Sept. 16, 2011, no pet.) (mem. op., not designated for publication)[5]
(citing McCown
v. State, 192 S.W.3d 158, 162 (Tex. App.—Fort Worth 2006, pet. ref’d); Goar v. State, 68
S.W.3d 269, 272 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d)).


            Section 550.021 of the Texas
Transportation Code defines the offense of accident involving personal injury
or death, and provides that the operator of a vehicle involved in an accident
resulting in injury or death commits an offense if “the person does not stop or does not comply with the requirements
of this section.”  Tex. Transp. Code Ann. § 550.021(c)
(emphasis added).  There is no dispute in
this case that Spinks operated the vehicle involved in this accident which
caused Spataro’s death.  Thus, the contention is whether he
intentionally or knowingly failed to stop, failed to return, or failed to
remain and render aid in accordance with Section 550.023.  Spinks recites evidence that the road was
dark and that testimony shows he tried to look for what he had hit.  Because he could not find anyone or anything,
the brief argues he should not be charged with having failed to remain and
render aid.[6]  We focus on Spinks’ failure to stop.[7]  

            The culpable mental state for this
offense is that the accused had knowledge of the circumstances surrounding his
conduct, meaning he had knowledge that an accident occurred.  Henry,
2011 WL 3890736, at *3 (citing Goss v.
State, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979) (establishing culpable
mental state for offense); Goar, 68 S.W.3d at 272). 
Intent or knowledge may be inferred from the acts, words, and conduct of
an accused at the time of an offense.  Hart v. State, 89 S.W.3d 61, 64 (Tex.
Crim. App. 2002).  Moreover, “[t]here is
no requirement that an accused must have positive, subjective knowledge of the
nature or extent of injury resulting from the collision.”  McCown, 192 S.W.3d at 162. 

            Spinks clearly knew he had collided
with a large object.  While he told
Edwards that he believed that he had struck a deer, in his telephone call to
Juanita that night, he identified the object he hit as a person.  Doris specifically testified that Spinks told
her he did not stop.[8]  Instead, Spinks went to a local eatery,
ordered a burger and fries, and played a video game before he confessed to
Juanita.  He then returned to the scene
of the accident and attempted, in a drunken state, to locate the person he had
stricken.  Juanita testified that she
could see the victim’s body when she got “off the road” and that the fairly
tall grass in the ditch where it laid did not conceal the body.  A reasonable jury could have determined that
had Spinks initially stopped his vehicle after striking Spataro,
he would have been able to see the body. 
In any event, the jury was free to believe Doris’ testimony of Spinks’
admission to her. 

            We find the evidence legally
sufficient to show that Spinks, who operated a vehicle in an accident resulting
in Spataro’s death, knowingly failed to stop as
required by Section 550.021.  We overrule
this point of error.  

II.        Point
of Error Regarding Admission of Statements Is Inadequately Briefed

            Spinks argues that the trial court “should
reverse and remand because statements made by Appellant prior to Miranda
Warnings and without audio recording were admitted at trial.”  The entirety of Spinks’ application portion
of the briefing recites:

At
trial, the defense objected to statements made by Appellant 1) Appellant had
not been Mirandized, and 2) no audio was available on
the recording presented at trial.  No
corroborating evidence of the alleged statements at the time of arrest was
presented at trial.  No audio recording
of waiver of any rights or actual statements made were presented at trial.  No such recording was ever provided to
defense counsel.  No recording was
presented at trial by which voices could be identified[.]

 

(Record
citation omitted.) 

            Spinks fails to identify any
particular statement or statements of which he complains.  His only record citation refers to counsel
objecting to admission of a video recording which did not contain audio, an
objection that was later withdrawn.  The
only citation to authority presented is a citation to Article 38.22, Section
3(a) of the Texas Code of Criminal Procedure, which provides that “[n]o oral or
sign language statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding,”
unless, inter alia, “an electronic recording, which may include motion picture,
video tape, or other visual recording is made of the statement” and “prior to
the statement but during the recording the accused is given the warning in
Subsection (a) of Section 2 above and the accused knowingly, intelligently, and
voluntarily waives any rights set out in the warning.”  Tex. Code Crim. Proc. Ann. art.
38.22, § 3(a)(1), (2) (West 2005).  

            Rule 38.1(h) of the Texas Rules of
Appellate Procedure requires that a brief contain “a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the
record.”  Tex. R. App. P. 38.1(h); see
In re N.L.G., No. 06-06-00066-CV, 2006 WL 3626956, at *2 (Tex.
App.—Texarkana Dec. 14, 2006, pet. denied) (mem. op.,
not designated for publication) (declining to comb through record where record
citation did not contain reference to allegedly overruled objection).  An inadequately briefed issue may be waived
on appeal.  McCarthy v. State, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); Fredonia State Bank v. Gen. Am. Life Ins. Co.,
881 S.W.2d 279, 284–85 (Tex. 1994) (discussing “longstanding rule” that point
may be waived due to inadequate briefing); Hooper
v. Smallwood, 270 S.W.3d 234 (Tex. App.—Texarkana 2008, pet. denied).  From the briefing provided and citation to
the record included in the brief, we cannot discern the statements of which
Spinks complains, whether they were specifically objected to, and whether the
court allowed their admission.  The sole
reference to the record in Spinks’ brief on this point is to an objection which
was later withdrawn; accordingly, if there was once a valid objection raised to
something there, the objection was not preserved.  In addition to containing inadequate citation
to the record, no discussion of harm analysis was mentioned in the brief.  

            If a point of error is inadequately
briefed, we will not address it.  See Tex.
R. App. P. 38.1; Vuong v. State, 830 S.W.2d 929, 940 (Tex.
Crim. App. 1992).  This Court is not the
appellant’s advocate.  Although we have
an interest in a just adjudication, we also have an interest in remaining
impartial.  Ex parte Lowery, 840 S.W.2d 550, 552 n.1 (Tex. App.—Dallas 1992), rev’d on other grounds, 867 S.W.2d 41 (Tex.
1993).  Thus, we will not brief Spinks’
case for him.  Heiselbetz v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995); see Busby
v. State, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); Lawton v. State, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995), overruled on other grounds by Mosley v.
State, 983 S.W.2d 249 (Tex. Crim. App. 1998).  Finding Spinks’ brief inadequate as to this
point of error, we overrule it.  Castillo v. State, 810 S.W.2d 180, 182
n.1 (Tex. Crim. App. 1990) (finding argument inadequately briefed and refusing
to address it where defendant failed to identify part of record where issue was
preserved).[9]

III.       Conclusion


            We affirm the trial court’s judgment. 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          November 14, 2011

Date
Decided:             December 2, 2011

 

Do Not
Publish

 











[1]The
title of Section 550.021 of the Texas Transportation Code, setting forth the
offense, is “Accident Involving Personal Injury or Death,” but this offense is
commonly referred to as failure to stop and render aid.  See
Tex. Transp. Code Ann. § 550.021 (West
2011).

 





[2]Miranda v. Arizona, 384 U.S. 436 (1966).





[3]Spataro’s Texas Longhorn hat, sunglasses, and flip-flop
were found in the roadway. 





[4]When
an accident results in personal injury or damage to a vehicle, the operator is
required to provide reasonable assistance to any person injured in the accident
if it is apparent that treatment is necessary. 
Tex. Transp. Code Ann. §
550.023 (West 2011).

 





[5]Although
the unpublished case has no precedential value, we may take guidance from it “as
an aid in developing reasoning that may be employed.”  Carrillo
v. State, 98 S.W.3d 789, 794 (Tex. App.––Amarillo 2003, pet. ref’d).





[6]This argument was rejected by our sister court in Barnette v. State, No. 08-09-00147-CR, 2011 WL
486949, at *2 (Tex. App.––El Paso Feb. 9, 2011, pet. ref’d)
(mem. op., not designated for publication) (“although
Appellant testified that she stopped, looked outside her door, and did not see
anything, the jury could have found the stop insufficient, disregarded her
testimony, and rationally inferred that she knew she hit and killed another
person given the dead body found just minutes after the accident occurred”)
(See footnote 5 regarding unpublished cases.). 

 





[7]The
indictment alleged Spinks “knowingly le[ft] the scene of said accident” and
failed to remain and render aid.  The
jury was charged in accordance with all three alternate means of committing the
offense.  

 





[8]Moreover,
in accident cases a stop “does not mean a stop for an instant, enabling but a
cursory examination of the surroundings, but does mean a definite cessation of
movement for a sufficient length of time for a person of ordinary powers of
observation to fully understand the surroundings of the accident and to possess
himself of an accurate knowledge of the results of the accident.”  Moore
v. State, 145 S.W.2d 887, 888 (Tex. Crim. App. 1940).





[9]After
combing through the record, which we are not required to do in light of the
inadequate briefing, we find statements of which Spinks might have
complained.  Assuming Spinks is complaining
of statements where he “walked up to [an officer] and immediately said, ‘I
didn’t see the guy walking down the middle of the road.’ . . . ‘I knew I hit
something, but I didn’t know what it was,’ the record suggests these were
statements which were volunteered by Spinks at a time when he was not
undergoing custodial interrogation.  See Tex.
Code Crim. Proc. Ann. art. 38.22, § 5 (West 2005).  The record established that Miranda warnings were issued immediately
after these statements.