

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00230-CR

_____

JAMES BLAKE SPINKS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 1021437

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

James Blake Spinks' evening of drinking at the Texas Lounge in Sulphur Springs, Texas was the genesis of the events causing the death of a fellow patron of the Lounge, twenty-one-year-old Nathan Paul Spataro. After Spinks' alcoholic indulgence and despite being warned that he was too drunk to drive, Spinks left the bar at the midnight closing time and drove away in his vehicle. On a dark road leading from the Lounge, his vehicle collided violently with a large object, shattering the windshield. Spinks maintained that he did not call the police because he said that he believed that his vehicle had struck a deer. Tragically for him and for Spataro, the object which Spinks had struck was Spataro, who was killed instantly. After a jury convicted Spinks of an accident involving personal injury or death,[1] he was sentenced to ten years' imprisonment and was ordered to pay a $10,000.00 fine. On appeal, Spinks maintains that the evidence is insufficient to support the judgment, and argues that the trial court erred in admitting statements made by Spinks "prior to Miranda[2] Warnings and without audio recording." Because the evidence is sufficient to support the conviction, and Spinks' brief is inadequate to preserve the second issue for our review, we affirm the trial court's judgment.

---

[1] The title of Section 550.021 of the Texas Transportation Code, setting forth the offense, is "Accident Involving Personal Injury or Death," but this offense is commonly referred to as failure to stop and render aid. *See* TEX. TRANSP. CODE ANN. § 550.021 (West 2011).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

## I. Sufficient Evidence Supported Spinks' Conviction

Doris Evelyn Gray met Spinks at about 4:30 on the afternoon of the accident when she went to visit her daughter, Juanita Joyce Gray, who was working at the Lounge. Spinks was drinking "Crown with a splash of Coke," and he remained at the Lounge for the remainder of the evening and a good portion of the night. Dudley Calhoun, karaoke host at the Texas Lounge, testified that Spataro joined Spinks at the establishment. Security guard Don McKenzie described Spinks as obviously intoxicated and warned him not to drive his vehicle. Spinks ignored the warning and drove his vehicle, shortly thereafter running down Spataro with it, killing Spataro instantly.

Darrell Edwards also left the Texas Lounge at approximately midnight and "[w]ent straight over to Burton's, across the road." Edwards and a friend remained at that local eatery for two hours. According to recordings retrieved from video surveillance cameras, Spinks arrived at Burton's at 1:25 a.m. where, Edwards testified, Spinks "ordered a burger to go, burger and fries, and he stood up there and played a little, old quarter game for a few minutes and, you know, just messed around" for about an hour. As Edwards was leaving the establishment "a few minutes after 2:00," he saw Spinks' "car there in a handicapped parking lot and noticed the windshield was busted." Spinks came outside and told Edwards that he had hit a deer while driving. The video surveillance recording revealed that Spinks remained at Burton's until 2:21 a.m.

3

At 2:47 a.m., Doris was visiting with Juanita when Juanita received a telephone call from Spinks. Doris was able to overhear the telephone conversation between Spinks and Juanita and testified that Spinks had said that "there's been some problems" and "I need you to hide me out." Juanita testified that Spinks "freaked out" and told her during the telephone conversation "that he had hit someone." At the end of the conversation, Doris and Juanita "went down the road to look for someone that [Spinks] had supposedly hit." En route to the location of the accident, Juanita called the police.

Doris and Juanita saw no signs of an accident during their initial search and, believing that Spinks was playing a trick on them, began to return home. On the way home, they saw Spinks "walking down the road," but decided to drive past him. Juanita received another telephone call from Spinks, wherein she expressed her negative opinion of the joke she believed was being played. Spinks responded, "I hit somebody. Come look at my car." Doris and Juanita "met him up where his car was" and saw that the windshield "was bashed in completely." Doris went on to relate that Spinks "was extremely upset. He had said he had hit someone and he didn't want to go back to jail." Doris testified to the following conversation with Spinks:

> I went back to the car, to the back of the car where he was, and I said, . . .
> "Where did you hit this person?"
> And he says, "On the road."
> And I said, "Well, did you stop?"
> "No, I -- I didn't"
> And I said, "Okay this person is hurt. You've hit someone, and he's hurt.
> I want you to sit right there, and don't you get up, don't you move. . . .
> . . . .

4

> . . . And as we were leaving he looked up at me, and he said, "I'm not going back to jail."

In hindsight, Juanita believed that when they had seen Spinks walking down the road, he had been looking for the person he had struck with his car. As Doris and Juanita "started slowly going down the service road," they saw a "a flip-flop, a pair of glasses and a hat, and we stopped."[3] The two exited their vehicle and began searching the "dark" road using illumination from their cell phones and Juanita discovered Spataro's lifeless body. Although Spataro was wearing a long-sleeved black T-shirt and dark blue jeans, Juanita testified that she had no difficulty spotting the body once she was "off the road" "because I was looking for somebody, and he was on a bed of rocks." She also stated that the tall grass in which the body was found did not conceal it from view.

City of Sulphur Springs Police Lieutenant Jason Ricketson was dispatched to the scene of the accident at 3:06 a.m. He was met by Juanita and Doris, who had located Spataro "in the actual bar ditch," which sustained a growth of grass "12 to 16 inches" high. Ricketson described the area as "fairly dark." He opined that when Spataro was hit, he "went up on top of the vehicle and onto the windshield." Spataro had died instantaneously and "didn't appear to have any signs of life." J. K. Townsend-Parchman, M.D., an employee of the Dallas County Medical Examiner who conducted the autopsy report, testified that "as soon as he [Spataro] got that very large amount of force applied to his head, he was, for all intents and purposes, gone." Townsend-Parchman

---

[3]Spataro's Texas Longhorn hat, sunglasses, and flip-flop were found in the roadway.

5

indicated that there was no medical care that could have been given to Spataro after the trauma that may have kept him alive.

At the same time Ricketson was sent to the scene of the accident, Sulphur Springs police officer Lonnie Taylor was dispatched to the Lounge parking lot. Spinks returned to the accident scene, approached Taylor and stated, "I didn't see the guy walking down the middle of the road," and, "I knew I hit something, but I didn't know what it was." Taylor "saw the vehicle had quite a bit of damage, even on the windshield." Taylor testified Spinks made the following statement after the *Miranda* warning:

> [Spinks] advised me he would speak to me and began telling me that he stopped his vehicle and looked around after he hit something. [Spinks] informed me that he was traveling down East Industrial when he hit something. [Spinks] told me that he did not know what he hit, so he stopped the vehicle and got out and looked around. [Spinks] advised that he did not see anything so he got back into the vehicle and drove to Burton's Family Restaurant to pick up some food and returned back to the Texas Lounge. [Spinks] then informed me that he went back to the accident site where he looked around again and did not find what he hit.

Taylor "inspected the vehicle, noticed there was blood and hair on the windshield," almost half of which had been completely shattered. After conducting field sobriety tests, Taylor believed that Spinks was intoxicated and transported him to the Hopkins County Memorial Hospital, where a blood sample was taken from Spinks. Spinks' blood alcohol concentration was .13. Under Texas law, a person is intoxicated if he has a blood-alcohol concentration of .08 or more. TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011).

Spinks believes this evidence was legally insufficient to sustain his conviction for accident involving personal injury or death. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Section 550.021(a) sets out the following requirements:

(a)     The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:

(1)     immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2)     immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3)     remain at the scene of the accident until the operator complies with the requirements of Section 550.023.[4]

TEX. TRANSP. CODE ANN. § 550.021(a).   These requirements are called "failing to stop," "failing to return," and "failing to remain," and are viewed as "alternate methods of committing the same offense."   *Huffman v. State*, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008).   The elements of the offense of accident involving personal injury or death are:   (1) an operator of a motor vehicle, (2) involved in an accident, (3) resulting in injury or death of any person, and (4) intentionally and knowingly (5) fails to stop or render reasonable assistance.   *See Henry v. State*, No. 06-11-00010-CR, 2011 WL 3890736, at *2 (Tex. App.—Texarkana Sept. 16, 2011, no pet.) (mem. op., not designated for publication)[5] (citing *McCown v. State*, 192 S.W.3d 158, 162 (Tex. App.—Fort Worth 2006, pet. ref'd); *Goar v. State*, 68 S.W.3d 269, 272 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd)).

Section 550.021 of the Texas Transportation Code defines the offense of accident involving personal injury or death, and provides that the operator of a vehicle involved in an

---

[4]When an accident results in personal injury or damage to a vehicle, the operator is required to provide reasonable assistance to any person injured in the accident if it is apparent that treatment is necessary.   TEX. TRANSP. CODE ANN. § 550.023 (West 2011).

[5]Although the unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed."   *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

accident resulting in injury or death commits an offense if "the person does not stop *or* does not comply with the requirements of this section." TEX. TRANSP. CODE ANN. § 550.021(c) (emphasis added). There is no dispute in this case that Spinks operated the vehicle involved in this accident which caused Spataro's death. Thus, the contention is whether he intentionally or knowingly failed to stop, failed to return, or failed to remain and render aid in accordance with Section 550.023. Spinks recites evidence that the road was dark and that testimony shows he tried to look for what he had hit. Because he could not find anyone or anything, the brief argues he should not be charged with having failed to remain and render aid.[6] We focus on Spinks' failure to stop.[7]

The culpable mental state for this offense is that the accused had knowledge of the circumstances surrounding his conduct, meaning he had knowledge that an accident occurred. *Henry*, 2011 WL 3890736, at *3 (citing *Goss v. State*, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979) (establishing culpable mental state for offense); *Goar*, 68 S.W.3d at 272). Intent or knowledge may be inferred from the acts, words, and conduct of an accused at the time of an offense. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Moreover, "[t]here is no

---

[6]This argument was rejected by our sister court in *Barnette v. State*, No. 08-09-00147-CR, 2011 WL 486949, at *2 (Tex. App.—El Paso Feb. 9, 2011, pet. ref'd) (mem. op., not designated for publication) ("although Appellant testified that she stopped, looked outside her door, and did not see anything, the jury could have found the stop insufficient, disregarded her testimony, and rationally inferred that she knew she hit and killed another person given the dead body found just minutes after the accident occurred") (See footnote 5 regarding unpublished cases.).

[7]The indictment alleged Spinks "knowingly le[ft] the scene of said accident" and failed to remain and render aid. The jury was charged in accordance with all three alternate means of committing the offense.

requirement that an accused must have positive, subjective knowledge of the nature or extent of injury resulting from the collision." *McCown*, 192 S.W.3d at 162.

Spinks clearly knew he had collided with a large object. While he told Edwards that he believed that he had struck a deer, in his telephone call to Juanita that night, he identified the object he hit as a person. Doris specifically testified that Spinks told her he did not stop.[8] Instead, Spinks went to a local eatery, ordered a burger and fries, and played a video game before he confessed to Juanita. He then returned to the scene of the accident and attempted, in a drunken state, to locate the person he had stricken. Juanita testified that she could see the victim's body when she got "off the road" and that the fairly tall grass in the ditch where it laid did not conceal the body. A reasonable jury could have determined that had Spinks initially stopped his vehicle after striking Spataro, he would have been able to see the body. In any event, the jury was free to believe Doris' testimony of Spinks' admission to her.

We find the evidence legally sufficient to show that Spinks, who operated a vehicle in an accident resulting in Spataro's death, knowingly failed to stop as required by Section 550.021. We overrule this point of error.

## II.     Point of Error Regarding Admission of Statements Is Inadequately Briefed

---

[8]Moreover, in accident cases a stop "does not mean a stop for an instant, enabling but a cursory examination of the surroundings, but does mean a definite cessation of movement for a sufficient length of time for a person of ordinary powers of observation to fully understand the surroundings of the accident and to possess himself of an accurate knowledge of the results of the accident." *Moore v. State*, 145 S.W.2d 887, 888 (Tex. Crim. App. 1940).

10

Spinks argues that the trial court "should reverse and remand because statements made by Appellant prior to Miranda Warnings and without audio recording were admitted at trial." The entirety of Spinks' application portion of the briefing recites:

> At trial, the defense objected to statements made by Appellant 1) Appellant had not been Mirandized, and 2) no audio was available on the recording presented at trial. No corroborating evidence of the alleged statements at the time of arrest was presented at trial. No audio recording of waiver of any rights or actual statements made were presented at trial. No such recording was ever provided to defense counsel. No recording was presented at trial by which voices could be identified[.]

(Record citation omitted.)

Spinks fails to identify any particular statement or statements of which he complains. His only record citation refers to counsel objecting to admission of a video recording which did not contain audio, an objection that was later withdrawn. The only citation to authority presented is a citation to Article 38.22, Section 3(a) of the Texas Code of Criminal Procedure, which provides that "[n]o oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding," unless, inter alia, "an electronic recording, which may include motion picture, video tape, or other visual recording is made of the statement" and "prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1), (2) (West 2005).

11

Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h); *see In re N.L.G.*, No. 06-06-00066-CV, 2006 WL 3626956, at *2 (Tex. App.—Texarkana Dec. 14, 2006, pet. denied) (mem. op., not designated for publication) (declining to comb through record where record citation did not contain reference to allegedly overruled objection). An inadequately briefed issue may be waived on appeal. *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "longstanding rule" that point may be waived due to inadequate briefing); *Hooper v. Smallwood*, 270 S.W.3d 234 (Tex. App.—Texarkana 2008, pet. denied). From the briefing provided and citation to the record included in the brief, we cannot discern the statements of which Spinks complains, whether they were specifically objected to, and whether the court allowed their admission. The sole reference to the record in Spinks' brief on this point is to an objection which was later withdrawn; accordingly, if there was once a valid objection raised to something there, the objection was not preserved. In addition to containing inadequate citation to the record, no discussion of harm analysis was mentioned in the brief.

If a point of error is inadequately briefed, we will not address it. *See* TEX. R. APP. P. 38.1; *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992). This Court is not the appellant's advocate. Although we have an interest in a just adjudication, we also have an interest in

remaining impartial. *Ex parte Lowery*, 840 S.W.2d 550, 552 n.1 (Tex. App.—Dallas 1992), *rev'd on other grounds*, 867 S.W.2d 41 (Tex. 1993). Thus, we will not brief Spinks' case for him. *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995); *see Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998). Finding Spinks' brief inadequate as to this point of error, we overrule it. *Castillo v. State*, 810 S.W.2d 180, 182 n.1 (Tex. Crim. App. 1990) (finding argument inadequately briefed and refusing to address it where defendant failed to identify part of record where issue was preserved).[9]

## III.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:      November 14, 2011
Date Decided:        December 2, 2011

Do Not Publish

---

[9]After combing through the record, which we are not required to do in light of the inadequate briefing, we find statements of which Spinks might have complained. Assuming Spinks is complaining of statements where he "walked up to [an officer] and immediately said, 'I didn't see the guy walking down the middle of the road.' . . . 'I knew I hit something, but I didn't know what it was,' the record suggests these were statements which were volunteered by Spinks at a time when he was not undergoing custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5 (West 2005). The record established that *Miranda* warnings were issued immediately after these statements.